**Electronically Filed
Intermediate Court of Appeals
29454
30-AUG-2013
09:42 AM**

NO. 29454 and 29589

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

THOMAS FRANK SCHMIDT and LORINNA JHINCIL SCHMIDT,
Plaintiffs-Appellants and Cross-Appellees, v. HSC, INC.,
a Hawai'i corporation; RICHARD HENDERSON, SR.; ELEANOR R.J.
HENDERSON; JOHN DOES 1 through 10; JANE DOES 1 through 10;
and DOE UNINCORPORATED ASSOCIATIONS, INCLUDING PARTNERSHIPS
1 through 10, Defendants-Appellees and Cross-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 06-1-228)

MEMORANDUM OPINION
(Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiffs-Appellants Thomas Frank Schmidt and Lorinna
Jhincil Schmidt (**Schmidts**) appeal from the October 7, 2008 final
judgment (**Final Judgment**) entered by the Circuit Court of the
Third Circuit (**Circuit Court**)[1] in favor of Defendants-Appellees
HSC, Inc., (**HSC**) Richard Henderson, Sr. (**Richard**) and Eleanor
R.J. Henderson (**Eleanor**) (Richard and Eleanor are referred to as
the **Hendersons**)(collectively, HSC, Richard, and Eleanor are
referred to as **Appellees**) and against the Schmidts.

The Schmidts argue on appeal that the Circuit Court
erred when it dismissed their fraudulent transfers claim against
Appellees. Appellees argue on cross-appeal that the Circuit
Court erred when it concluded that the Schmidts were not time-

---

[1] The Honorable Greg K. Nakamura presided.

barred and when it failed to timely award Appellees their attorneys' fees and costs.

I.    BACKGROUND

    A.    The Foreclosure Action

        The definitive and detailed saga of Realty Finance, Inc. v. Schmidt, is chronicled in the Hawaiʻi Supreme Court's Memorandum Opinion (No. 23441) dated March 18, 2004.    The relevant highlights are as follows.[2]

        In 1991 and 1995, the Schmidts executed and delivered various promissory notes and mortgages that were later assigned to Realty Finance, Inc. (**Realty Finance**).[3]    The Schmidts subsequently defaulted on the notes and mortgages and Realty Finance filed a foreclosure action against the Schmidts.    On February 24, 1998, a motion for an interlocutory decree of foreclosure was granted, the amount of the Schmidts' debt to Realty Finance was determined, and a judgment was entered. Thereafter, Realty Finance sold the Schmidts' notes and mortgages to another entity, Waikiki Investments 418, Inc. (**Waikiki Investments**), pursuant to various agreements that, *inter alia*, allowed Waikiki Investments to collect the sums due on the notes and mortgages.

        In June of 1999, Waikiki Investments collected a total of $309,000 from Amerasian Land Co. (**Amerasian**)[4] and $225,000 from Lulani Properties, LLC (**Lulani**), which were intended to secure a release of the mortgages encumbering the mortgaged

---

[2]    The supreme court's Memorandum Opinion is accessible at http://www.state.hi.us/jud/23441mop.htm.    Additional facts are set forth in the preceding Intermediate Court of Appeals (**ICA**) Memorandum Opinion, which was reversed by the supreme court's Memorandum Opinion, which rejected the ICA's legal analysis and conclusion, but not its statement of the facts.    The ICA's Memorandum Opinion, dated June 27, 2002, is accessible at http://www.state.hi.us/jud/ica23441mop2.htm#N_16_.

[3]    Realty Finance is not a party to this present action.

[4]    Thomas Schmidt is identified as the vice-president of Amerasian.

properties. Waikiki Investments then defaulted on its agreement with Realty Finance. In July of 1999, Realty Finance filed a notice stating that it was again the real-party-in-interest and "revived" the foreclosure proceedings. After various further proceedings in the Circuit Court and the ICA, which were unfavorable to the Schmidts, on March 18, 2004, the Hawai'i Supreme Court held: (1) that the Schmidts' notes and mortgages merged into the February 24, 1998 judgment; (2) thus, Realty Finance in effect assigned the right to proceeds under the judgment to Waikiki Investments; (3) when Amerasian and Lulani paid Waikiki Investments, they paid the debts identified in the February 24, 1998 judgment and, accordingly, paid down the judgment; and (4) therefore, the mortgage debts owed by the Schmidts were reduced by the payments made by Amerasian and Lulani to Waikiki Investments. In essence, the supreme court agreed with Amerasian and the Schmidts' argument that it was wrong to require them to pay over $1,000,000 for a $564,000 judgment and to entitle Realty Finance and its assignees to collect over $1,000,000 on a $564,000 judgment. The case was remanded, *inter alia*, for an appropriate accounting and further proceedings consistent with the supreme court's decision. The result was a judgment debt in favor of the Schmidts.

B.    The Realty Finance Transfers

In the meantime, prior to the supreme court's ruling, and after Realty Finance reasserted its interest in the foreclosure proceedings, Realty Finance sought and was granted approval of a private sale of the mortgaged properties. Pursuant to an order entered in the foreclosure proceedings on January 31, 2000, the foreclosure commissioner distributed the sales proceeds to Realty Finance over the Schmidts' objections. Prior to a series of judgments "finalizing" the orders confirming the private sale, approving the distribution of the sale proceeds, and entering a deficiency judgment against the Schmidts, dated

April 11, 2000, May 10, 2000, and June 9, 2000, respectively, Realty Finance used the sale proceeds to the benefit of its parent corporation, HSC.[5] More specifically, Realty Finance directed payment to four of HSC's "creditors" as follows: (1) a February 11, 2000 check payable to Richard in the amount of $54,339.55; (2) a February 11, 2000 check payable to Eleanor in the sum of $78,000.00; (3) a February 15, 2000 check payable to Goodsill, Anderson, Quinn and Stifel in the amount of $119,393.42; and (4) a March 1, 2000 check payable to Kamehameha Schools-Bernice Pauahi Bishop Estate.

C.    The Schmidts' Discovery of the Transfers

The Schmidts became aware of the above-referenced transfers on March 18, 2005, at the latest. On April 12, 2005, the Schmidts' attorney wrote to the Appellees' attorney:

> On March 18, 2005 we met with you at your offices, wherein, in response to our document request, you produced documents on behalf of Realty Finance. One of the documents that you produced was the Realty Finance monthly bank statement for February, 2000 at American Savings Bank. Said monthly statement shows a deposit of $487,036.74 to Realty's account, which we surmise to be the payment from the foreclosure commissioner (Mr. Lau) of the proceeds due Realty from the sale of the Schmidt property. Thereafter, there are 4 checks:   1. #19264 for $54,339.55 on 2-14-00; 2. #19263 for $78,000.00 on 2-14-00; 3. #20203 for $119,393.42 on 2-18-00; and, 4. #21769 for $165,058.42 on 3-1-00, written on said account.

The Schmidts claim, however, that they did not discover the fraudulent nature of the transfers until July 26, 2005, when Realty Finance's former treasurer, Michael Chagami, was deposed.

D.    The Proceedings Below

On April 7, 2006, the Schmidts filed a complaint against the Appellees, alleging that the transfers were made in an effort to defraud them of the moneys owed to them after the Hawai'i Supreme Court's decision and the subsequent accounting.

---

[5]    In the ICA's decision in the foreclosure action, which was reversed on other grounds, this court noted that Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) did not authorize finalization of the April 11, 2000 or May 10, 2000 judgments.

In their complaint, the Schmidts alleged two causes of action, one for the fraudulent transfer of funds under Hawaii Revised Statutes (**HRS**) § 651C-4(a)(1) (1993) and another for unfair or deceptive acts or practices pursuant to HRS § 480-2 (2008). The Appellees moved for judgment on the pleadings on January 7, 2007. The Circuit Court granted the Appellees' motion with respect to the HRS § 480-2 claim, but denied it as to the fraudulent transfers claim. The Appellees filed a motion for summary judgment on October 1, 2007, after discovery was taken, arguing that the fraudulent transfers claim was without merit, and in any event, was time-barred. This motion was denied on the grounds that there were genuine issues of material fact relating to both arguments.

A two-day bench trial was held on July 1 and 2, 2008. Appellees again moved for a judgment on partial findings based on the argument that the Schmidts' claim was time-barred. No order was entered on this motion. The Circuit Court issued its Findings of Fact and Conclusions of Law on October 7, 2008, and entered Final Judgment in favor of the Appellees that same day, holding that the Appellants failed to prove an actual intent to hinder, delay, or defraud Realty Finance's creditors, pursuant to HRS § 651C-4(a)(1). Three days later, the Appellees moved for attorneys' fees and costs. On November 5, 2008, the Appellants filed a timely notice of appeal from the October 7, 2008 judgment. The Circuit Court did not enter an order responding to the Appellees' fees and costs motion until January 9, 2009, which was more than ninety days after the Appellees filed the motion. Therefore, pursuant to Hawai'i Rules of Appellate Procedure

(**HRAP**) Rule 4(a)(3),[6] the Appellees' motion was deemed to be automatically denied. The Appellees filed a cross-appeal on January 9, 2009.

II. POINTS OF ERROR

The Schmidts raise sixteen points of error on appeal, challenging as clearly erroneous Findings of Fact (**FOFs**) 5, 7, 8.a. (in two ways), 9, 9.a., 9.b., 9.c., 9.d., 9.f., 9.g., as well as the Circuit Court's failure to make additional FOFs, contending that the Circuit Court's Conclusion of Law 5 was wrong, and asserting that the Circuit Court reversibly erred when it dismissed the Schmidt's action, entered judgment against them, and failed to award them damages, attorneys' fees, and costs.

On the cross-appeal, Appellees raise two points of error, contending that the Circuit Circuit erred when it failed to conclude that the Schmidts' claim was time-barred and when it failed to timely award Appellees' their attorneys' fees and costs.

III. APPLICABLE STANDARDS OF REVIEW

Findings of fact are reviewed under the clearly erroneous standard. Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004).

---

[6]      HRAP Rule 4(a)(3) provides:

TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS. If any party files a timely motion for . . . attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

Conclusions of law are reviewed <u>de</u> <u>novo</u>. <u>Id.</u>
Statutory interpretation is also reviewed <u>de</u> <u>novo</u>. <u>Bhakta v.</u>
<u>Cnty. of Maui</u>, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005).

IV.   DISCUSSION

A.   <u>Whether the Schmidts' Claim Was Time-Barred</u>

We first consider the Appellees' argument on cross-appeal that the Schmidts' fraudulent transfers claim was time-barred.   The Schmidts' claim was brought pursuant to Hawaii Revised Statutes (**HRS**) Chapter 651C, Hawai'i's Uniform Fraudulent Transfer Act (**UFTA**), specifically HRS § 651C-4(a)(1).   HRS § 651C-9 (1993) provides:

> **§651C-9 Extinguishment of cause of action.** A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>     (1) Under section 651C-4(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> . . . .

The allegedly fraudulent transfers were made in February and March of 2000.   The Schmidts' complaint was filed on April 7, 2006.   It is undisputed that the Schmidts' UFTA action was not brought within four years after the transfers were made. The disputed issue is the statutory interpretation of the savings clause of HRS § 651C-9(1), which extends the date for the "extinguishment" of claims to "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant".

It is uncontroverted that, on March 18, 2005, the Schmidts received a Realty Finance bank account statement showing that the four checks, which totaled $416,791.30, were disbursed by Realty Finance in February of 2000, shortly after the foreclosure proceeds were deposited into the account.   Thus, on

March 18, 2005, the Schmidts discovered that the transfers occurred. Appellees argue that the Schmidts' UFTA claim was extinguished no later than one year from this date.[1] The Schmidts argue that, although they learned of the transfer on March 18, 2005, they did not discover the "fraudulent nature" of the transfer until July 26, 2005, when they learned that the effect of the transfers was to prevent them from recovery on their judgment.

"It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (brackets provided and citation omitted). Courts should depart from the plain meaning of a statute, however, to avoid inconsistency, contradiction, and illogicality. Kinkaid v. Bd. of Review, 106 Hawai'i 318, 323, 104 P.3d 905, 910 (2004) (citations omitted).

Here, the savings clause in HRS § 651C-9(1) plainly, unambiguously, and explicitly extends the four year time limit to no later than one year after the transfer has been discovered (or reasonably should have been discovered). The term "transfer" is specifically defined in HRS § 651C-1 to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes a payment of money, a release, a lease, and the creation of a lien or encumbrance."

---

[1]    Appellees also argue that the transfers "reasonably could have been discovered" as early as August of 2004. However, it is unnecessary to address that contention here.

This statute's identification of the "transfer" as the triggering event for extinguishment stands in sharp contrast with the language of Hawai'i's general tort statute of limitations (in HRS § 657-7), which begins to run when the plaintiff's "cause of action" accrues, i.e., when the plaintiff "discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d 689, 693-94 (1982); see also Vidinha v. Miyaki, 112 Hawai'i 336, 341, 145 P.3d 879, 884 (App. 2006). Nor does HRS § 651C-9 contain a further tolling provision, such as the ones contained in HRS §§ 657-7.3 (applicable to medical torts) and 657-20 (applicable to all personal actions mentioned in Part I of HRS chapter 657 and wrongful death actions in HRS § 663-3). Had the Hawai'i Legislature intended to require knowledge of the "fraudulent nature" to trigger the UFTA statute of limitations, it could have included such language in its statute, as Arizona's legislature has done, but it did not. Compare ARIZ. REV. STAT. ANN. § 44-1009(1) with HRS § 651C-9(1).

Although UFTA is a uniform act, there is no uniformity in the interpretation of the "extinguishment" provision. As the Schmidts have urged, a number of courts have held that "the one‑year period does not begin to run until the fraudulent nature of the transfer is discovered or reasonably discoverable." In re Maui Indus. Loan & Fin. Co., 454 B.R. 133, 137 (Bankr. D. Haw. 2011) (citations omitted) (citing numerous cases adopting "fraudulent nature of the transfer" as the trigger). However, other jurisdictions have adopted the plain language reading of the statute, with or without explanation. See, e.g., Fitness Quest Inc. v. Monti, 2012 WL 3587491 (N.D. Ohio 2012), In re Ewbank, 359 B.R. 807, 810 (Bankr. D. N.M. 2007); In re Hill, 2004

WL 5694988 (M.D.Fla. 2004); Cadle Co. v. Wilson, 136 S.W.3d 345 (Tex. Ct. App. 2004); Pereyron v. Leon Constantin Consulting, Inc., 2004 WL 1043724 (Del.Ch. 2004); Gulf Ins. Co. v. Clark, 304 Mont. 264, 269, 20 P.3d 780, 783 (2001) (adopting a "plain meaning" interpretation); see also Salisbury v. Majesky, 817 N.E.2d 1219, 1221-22 (Ill. App. Ct. 2004); Joslin v. Grossman, 107 F. Supp. 2d 150, 155 (D. Conn. 2000); In re Earle, 307 B.R. 276, 290 (Bankr. S.D. Ala. 2002); Cunningham v. Gage, 686 S.E.2d 800, 801 (Ga. Ct. App. 2009) (all simply calculating the time-bar from the date of the transfer). Some courts have observed that a significant difference between UFTA and the fraudulent conveyance act, which previously had been adopted in some jurisdictions, is that the fraudulent conveyance statute's savings clause expressly provided that the cause of action did not accrue until the discovery of the fraud. See, e.g., In re Spitaleri, 2006 WL 4458357, at *2 (Bankr. N.D. Ohio 2006). In short, these differing views do not compel us to ignore the plain meaning of the Hawai'i statute.

For these reasons, we conclude that the Schmidts' UFTA claim was extinguished no later than one year after their discovery of the transfers on March 18, 2005 and their April 7, 2006 complaint was untimely. Accordingly, we need not reach the merits of the Schmidts' points of error contending that the Circuit Court erred in otherwise rejecting their claims.

B.    Appellees' Attorneys' Fees

Appellees' motion for fees and costs was deemed denied pursuant to HRAP Rule 4(a)(3). On January 9, 2009, the Circuit Court entered an order stating, *inter alia*, that the deemed denial of Appellees' motion was due to an oversight by the Circuit Court, that the Circuit Court was otherwise inclined to grant in part the motion, and requesting that the matter be

10

remanded to allow the Circuit Court to rule on the matter. However, the Circuit Court never entered an order determining the amount of attorneys' fees and/or costs and the basis for such an award. Appellees' subsequent motions to this court for temporary remand to allow the Circuit Court to rule on Appellees' Hawai'i Rules of Civil Procedure (**HRCP**) Rule 60 motion were denied without prejudice on February 10, 2009 and April 23, 2009. After having reviewed the briefing on this matter and the record on appeal, we conclude that this case should be remanded for the limited purpose of allowing the Circuit Court to enter a ruling on the substance of Appellees' request for attorneys' fees and costs. See Life of the Land v. Ariyoshi, 57 Haw. 249, 251, 553 P.2d 464, 466 (1976) (per curiam); County of Hawaii v. C&J Coupe Family Ltd. P'ship, 119 Hawai'i 352, 367-68, 198 P.3d 615, 630-31 (2008).

V.    CONCLUSION

We affirm the Circuit Court's October 7, 2008 Final Judgment, but for the reasons stated herein. However, we remand this case for a ruling on Appellees' request for attorneys' fees and costs.

DATED:    Honolulu, Hawai'i, August 30, 2013.

On the briefs:

R. Steven Geshell
      and
Thomas P. Dunn
for Plaintiffs-Appellants
and Cross-Appellees

Paul Alston
Stephen M. Tannenbaum
(Alston Hunt Floyd & Ing)
for Defendants-Appellees
and Cross-Appellants

Presiding Judge

Associate Judge

Associate Judge

11